IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HOWARD GROSSER, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:12-CV-2691-N |
| | § | |
| RED MANGO FC, LLC, | § | |
| | § | |
| Defendant. | § | |

## **ORDER**

This Order addresses Defendant Red Mango FC, LLC's ("Mango") motion to dismiss or in the alternative plea in abatement; and motion to strike plaintiffs' jury demand [8]. This order also addresses Mango's motion to stay discovery [15]. The Court grants Mango's motion to strike and grants its motion to dismiss in part, and denies it in part. The Court denies Mango's motion to stay discovery and denies as moot its plea in abatement.

### I. THE PARTIES' FRANCHISE AGREEMENT DISPUTE

Mango franchises the operation of upscale frozen yogurt stores. Plaintiff Howard Grosser and Mango entered into a franchise agreement ("Franchise Agreement") for the development and operation of Grosser's store in a to-be-determined location in North Broward, Florida. Grosser used Plaintiff Phrozen Assets LLC ("Phrozen") to deal with Mango's vendors and contractors for work required to open Grosser's franchise. Grosser's franchise has not been successful. Plaintiffs attribute part of the reason for franchise's lack of success to Mango's actions or inactions.

ORDER – PAGE 1

Plaintiffs allege that Mango made a number of misrepresentations in connection with the execution of the agreement. Namely, Plaintiffs allege that Mango misrepresented four things: "the number of franchises that it had sold," "the cost to take the steps to buildout [*sic*] and open the store," "that it has never abandoned a location and/or closed a store," and "that the average profit generated was 10% of revenue." Compl. ¶¶ 14-17.

Plaintiffs also allege that Grosser relied on Mango, using a real estate broker provided by Mango, in selecting the location for his store. Plaintiffs believe that the location of Grosser's store is at least one reason that his store operates at a loss.

Plaintiffs further allege that Mango's contractors "were incompetent, caused unnecessary delays, [and] caused Grosser to have to incur unnecessary expenses," and caused Grosser to incur losses. Compl. ¶ 23. Additionally, Plaintiffs allege Mango held $7500 dollars in escrow for payment to the contractors and apparently paid that money to the contractors, even though Plaintiffs allege that the contractors' work was inadequate.

Finally, Plaintiffs allege that Mango made a "*pro forma*" projection of Grosser's likely sales, but that Mango knew this projection was false when it was made, and, in fact, "Grosser's sales are less than 40% of what Red Mango represented and promised." Compl. ¶ 29.

Plaintiffs filed suit, alleging violation of the Federal Trade Commission's ("FTC") franchise rule, 16 C.F.R. 436-37; breach of the Franchise Agreement; breach of the covenant of good faith and fair dealing; fraud in the inducement; violations of the Texas Deceptive Trade Practices Act ("DTPA"), TEX. BUS. & COM CODE §§ 17.42, 17.46; violations of the

Florida Deceptive and Unfair Trade Practices Act ("FDUFPA"), FLA. STAT. § 501.201, *et seq.*, violations of the Massachusetts Consumer Protection Act ("MCPA"); Mass. Gen. Laws ch. 93A, § 9; and violations of the Florida Franchise and Distributorship Law ("FFDL"), FLA. STAT. § 817.416, *et seq.* Mango moves to dismiss under FED. R. CIV. P. 12(b)(6).

## II. THE COURT GRANTS MANGO'S MOTION IN PART, AND DENIES IT IN PART

### *A. Rule 12(b)(6) Standard*

When faced with a Rule 12(b)(6) motion to dismiss or a 12(c) motion, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). But a court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that

all the allegations in the complaint are true (even if doubtful in fact)." *Id*. (internal citations omitted).

### B. The Court Dismisses All of Phrozen's Claims Against Mango

In Plaintiffs' complaint, Phrozen is mentioned only twice. Plaintiffs allege that "Phrozen Assets contracted with Red Mango's vendors and contractors for the work to be performed for the franchise purchased by Grosser," Compl. ¶ 30, and "as a result of Red Mango's actions and indications[,] Phrozen Assets was financially harmed." Compl. ¶ 31. Nowhere in the complaint do Plaintiffs allege that Phrozen had any contractual relationship with Mango. No provision of any contract is mentioned in Plaintiffs' complaint nor is any contract involving Phrozen attached to Plaintiffs' complaint. Thus, all of Phrozen's claims for breach of contract and breach of the covenant of good faith and fair dealing fail. Further, none of the allegations allege that Mango made any of these representations to Phrozen or that Phrozen relied on the representations in any way. Thus, as to Phrozen, the complaint fails to allege "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, and the Court dismisses all of Phrozen's claims against Mango. Because the Court dismisses all of Phrozen's claims, the Court will refer to Plaintiffs' joint allegations as Grosser's individual allegations.

### C. The Court Grants Mango's Motion to Dismiss Grosser's Claims for FTC Rules Violations

Grosser alleges that Mango violated the FTC's franchise rules, 16 C.F.R. §§ 436-37. Mango argues that Grosser's claim based on these alleged violations must fail because only the FTC has the authority to bring suit for violations of those rules. The Court agrees.

ORDER – PAGE 4

Grosser fails to cite a single case providing for a right of private enforcement of these FTC rules. This is most likely because such a private right does not exist. *See, e.g.*, *Fulton v. Hecht*, 580 F.2d 1243, 1248 n.2 (5th Cir. 1978) ("[T]here is no private cause of action for violation of the FTC Act."); *SCI Tex. Funeral Servs. v. Hijar*, 214 S.W.3d 148, 154 (Tex. App. – El Paso 2007, pet. denied) ("Federal courts have uniformly held that a private right of action does not exist under Section 5 of the [Federal Trade Commission Act].") Indeed, Grosser fails to refute Mango's contentions, instead stating that an article – written by plaintiff's counsel and cited by defendant's counsel in its motion – stands for the proposition that every *other* claim in the complaint should survive. Thus, the Court dismisses Grosser's claims based on an alleged violation the FTC's Franchise Rule.

### C. The Court Grants in Part, and Denies in Part Mango's Motion to Dismiss Grosser's Breach of Contract Claims

Grosser alleges that Mango violated numerous portions of the parties' Franchise Agreement. First, Grosser alleges that Mango violated paragraphs 3.1 and 3.2 of the Franchise Agreement. Paragraph 3.1 provides:

> 3.1 <u>Site Selection</u>. You must identify and acquire a site for the Store by the Control Date specified in the Summary Pages. The site must be located within the Site Selection Area identified in the Summary Pages, must meet Mango's then-current site selection criteria, and must otherwise be mutually acceptable to you and to Mango. Mango may assist you in site selection, in its sole discretion, which assistance may include making available to you the services of our designated tenant representative consulting firm. If Mango requires you to use the services of its designated tenant representative consulting firm, you agree to work with the consultant/broker and to pay the Project Management Fee in the amount set forth in the Summary Pages (which Mango may impose and collect on the firm's behalf). Ultimate site selection is solely your responsibility.

Franchise Agreement ¶ 3.1, *in* Def.'s App. Supp. Mot. to Dismiss 28-74.  Grosser does not allege a breach of the express terms of this provision.  Rather, Grosser alleges only that Mango required him to use a particular real estate broker to select the Red Mango Store site and that the broker picked a bad site.  Grosser does not allege that Mango promised or warranted anything about the broker or the broker's skills.  And the Court will not imply a promise by Mango to provide a competent broker where the express terms of the contract explicitly provides that ultimate site selection is Grosser's responsibility.  To do so would imply an obligation contradictory to the express terms of the agreement.  *See Universal Health Servs., Inc. v. Renaissance Women's Grp., P.A.*, 121 S.W.3d 742, 747 (Tex. 2003) (stating that an implied covenant "must rest entirely on the presumed intention of the parties as gathered from the terms as actually expressed in the written instrument itself"); *see also Rice v. Metro Life Ins. Co.*, 324 S.W.3d 660, 669 (Tex. App. – Ft. Worth 2010, no pet.) ("It is typically not proper for us to imply terms that contradict contract's express language.").  Thus, Grosser fails to state a claim for breach of paragraph 3.1.  Accordingly, the Court grants Mango's motion to dismiss as to paragraph 3.1.

Grosser also alleges that Mango breached paragraph 3.2.  That paragraph states in part:

> Mango will approve or refuse to approve a proposed site within 30 days after the receipt of these documents and any additional information as Mango may reasonably require.  Mango's failure to provide notification within this time period shall not be considered either approval or disapproval.  The parties acknowledge and agree that Mango's site approval is not an assurance that the Store will achieve a certain sales volume or level of profitability; *it means only that the proposed site meets Mango's minimum criteria for RED MANGO Stores*.

Franchise Agreement ¶ 3.2 (emphasis added). As to paragraph 3.2, Grosser alleges that Mango knew that the sales estimate was wrong, and that Mango knew that the store, where located, would generate losses. Grosser alleges that approving a store that Mango knows will operate at a loss is not an approval that meets Mango's minimum criteria. By approving a site selection that did not meet Mango's minimum criteria, Grosser alleges, Mango breached the Franchise Agreement. This allegation is sufficient to state a claim for breach of the Franchise Agreement as to paragraph 3.2. Thus, the Court denies Mango's motion to dismiss as to paragraph 3.2.

Grosser also alleges that Mango breached paragraph 3.4. That paragraph provides that

You shall follow Mango's procedures for Store construction and build out, shall construct and build out the Store according to Mango's standard and specifications for design, décor and layout, and shall equip the Store according to Mango's requirements for fixtures, furnishing, equipment, interior and exterior signage, artwork and graphics, and awnings.

Franchise Agreement ¶ 3.4. This provision, however, imposes obligations on Grosser, not on Mango. There is no indication in this provision that Mango expressly or implicitly warranted anything about its procedures or its selection of contractors. And although Grosser alleges that the contractors performed poorly, Mango promised nothing, at least in this provision, about those contractors' work. Thus, Grosser fails to state a claim for breach of paragraph 3.4 and, accordingly, the Court grants Mango's motion to dismiss as to this paragraph of the Franchise Agreement.

Grosser also alleges that Mango failed to provide the contractually promised store opening assistance, failed to provide the contractually promised pre-opening consultation

assistance, and failed to provide advertising and marketing. Each of these provisions expressly promises a service to Grosser, and Grosser alleges that Mango failed to provide that service. These allegations are sufficient to state claims for breach of paragraphs 5.2, 5.3, 5.4, and 9 of the Franchise Agreement.

In sum, the Court grants Mango's motion to dismiss to the extent that Grosser brings claims for breaches of paragraphs 3.1 and 3.4. The Court denies Mango's motion to dismiss as to Grosser's remaining breach of contract claims.

### E. The Court Denies Mango's Motion to Dismiss Grosser's Claim for Breach of the Covenant of Good Faith and Fair Dealing

The common-law duty of good faith and fair dealing arises only when a contract creates or governs unique, special relationships between the parties. *See Arnold v. Nat'l Cnty. Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987). The Texas Supreme Court has noted that this common-law duty does not extend "to all franchise agreements" because "a franchisor does not exert control over its franchisee's business comparable to the control an insurer exerts over its insured's claim." *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 225 (Tex. 2002) (citing *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 595-96 (Tex. 1992)). Still, a special relationship may arise if one party trusts and relies on the other. *See Tex. Taco Cabana, L.P. v. Taco Cabana of N.M.*, 304 F. Supp. 2d 903, 911 (W.D. Tex. 2003) (citing *Crim Trust & Tractor Co.*, 823 S.W.2d at 594).

Grosser pleads that it paid Red Mango "up front" and also paid "continuing royalties based upon the promises and representations of [Red Mango] to provider all of the

ORDER – PAGE 8

knowledge, expertise and assistance to [Grosser] to make his business successful." Compl. ¶ 47. Further, Grosser alleges that "Red Mango lied to Grosser, failed to provide the support promised to Grosser, and required Grosser to utilize the services of incompetent contractors" as well as requiring "Grosser to expend unnecessary funds" which deprived Grosser of the ability to make a profit. *Id.* ¶ 48. Grosser also incorporates his allegations that Red Mango forced Grosser to use its own broker, forced it to use particular contractors in construction, held $7500 in escrow to pay that contractor, and paid that contractor even though the contractor did a poor job. Grosser also alleges that Red Mango made a projection tthat Grosser would have at least $687,000 in sales per year.

These allegations are sufficient to state a breach of good faith and fair dealing claim for two reasons. First, Grosser alleges that Red Mango exerted more control over the franchise relationship than the typical franchisor. Rather than simply helping when asked, Grosser alleges that Red Mango forced a broker on him, forced a location, and forced allegedly incompetent contractors on him. Thus, this is not the typical case where the "franchisor does not exert control over its franchisee's business comparable to the control an insurer exerts over its insured's claim." *Subaru of Am., Inc.*, 84 S.W.3d at 225. Second, Grosser sufficiently alleges that he trusted and relied on Red Mango. Even if Red Mango did not necessarily force the location or the contractors on Grosser, Grosser alleges that he relied on their expertise to his detriment. He determined that the location was adequate based on Red Mango's representations that he would make at least $687,000 in sales when sales were actually less than 40% of that figure. This is sufficient to state a claim. *Cf. Tex. Taco*

*Cabana, L.P.*, 304 F. Supp. 2d at 911-12 (holding that franchisee stated claim where franchisor represented that delay would not jeopardize franchisee's development rights). Accordingly, the Court denies Mango's motion to dismiss Grosser's breach of covenant of good faith and fair dealing claims.

### F. The Court Grants Mango's Motion to Dismiss Grosser's Fraud in the Inducement Claims

"The elements of fraud include: 1) a misstatement or omission; 2) of material fact; 3) made with the intent to defraud; 4) on which the plaintiff relied; and 5) which proximately caused the plaintiff's injury." *Williams v. WMX Tech., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997) (citation omitted). Federal Rule of Civil Procedure 9(b) requires a plaintiff to plead fraud claims "with particularity." "Pleading fraud with particularity in [the Fifth] [C]ircuit requires 'time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby.'" *Williams*, 112 F.3d at 177 (quoting *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)) (last alteration in original).

Grosser alleges that Mango "misrepresented the number of franchises that it sold," Compl. ¶ 14, "the cost to take the steps to buildout and open the store," *id.* ¶ 15, that "it has never abandoned a location and/or close a store," *id.* ¶ 16, and that Mango made a knowingly false *pro forma* projection of Grosser's sales. *Id.* ¶¶ 26-27. Nowhere in these allegations, however, does Grosser allege where or when these representations took place. Grosser also fails to allege who made the representations and for what purpose. Finally, Grosser fails to

ORDER – PAGE 10

allege why the statements were fraudulent. Accordingly, the Court dismisses Grosser's fraud in the inducement claims.

### G. The Court Grants Mango's Motion to Dismiss Grosser's DTPA Claims

Grosser alleges that Mango violated sections 17.12 and 17.46 of the Texas DTPA. Section 17.12 provides:

> Sec. 17.12. DECEPTIVE ADVERTISING. (a) No person may disseminate a statement he knows materially misrepresents the cost or character of tangible personal property, a security, service, or anything he may offer for the purpose of
>
> (1) selling, contracting to sell, otherwise disposing of, or contracting to dispose of the tangible personal property, security, service, or anything he may offer; or
>
> (2) inducing a person to contract with regard to the tangible personal property, security, service, or anything he may offer.

Section 17.46 states in part:

> DECEPTIVE TRADE PRACTICES UNLAWFUL. (a) False, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful and are subject to action by the consumer protection division under Sections 17.47, 17.58, 17.60, and 17.61 of this code.
>
> (b) Except as provided in Subsection (d) of this section, the term "false, misleading, or deceptive acts or practices" includes, but is not limited to, the following acts: . . .
>
> (5) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he does not; . . .
>
> (7) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; . . .

ORDER – PAGE 11

> (9) advertising goods or services with intent not to sell them as advertised; . . .
>
> (24) failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed; . . . .

Grosser alleges that Red Mango's various alleged misrepresentations – the number of franchises sold, the cost to build the store, Red Mango's previous actions regarding troubled stores, and the sales projection figures – violate these statutory provisions. Mango asserts that the Court should dismiss Grosser's claims for the same reason the Court dismissed Grosser's fraud claims: Grosser failed to plead the claims with particularity.

DTPA claims are not fraud claims. Thus, Rule 9(b)'s provisions do not necessarily apply. A motion to dismiss under Rule 9(b) can result in the dismissal of claims other than fraud only in extraordinary circumstances:

> Where averments of fraud are made in a claim in which fraud is not an element, an inadequate averment of fraud does not mean that no claim has been stated. The proper route is to disregard averments of fraud not meeting Rule 9(b)'s standard and then ask whether a claim has been stated.

*Lone Star Ladies Investment Club v. Schlotzky's, Inc.*, 238 F.3d 363, 368 (5th Cir. 2001). "Therefore, dismissal of a claim . . . will result when the allegations of fraud are so general that allegations of fraud must be disregarded and the remaining complaint is rendered so incomprehensible that a claim . . . is no longer stated." *Infomart (India), Pvt., Ltd v. Metroworks Corp.*, No. No. 3:04-CV-1299-N, 2005 WL 292433, *7 (N.D. Tex. Feb. 7,

2005); *see also Marquez v. Fed. Nat'l. Mortg. Ass'n*, 3:10-CV-2040-L, 2011 WL 3714623, at *3 n.2 (N.D. Tex. Aug. 23, 2011) (applying Rule 8 to DTPA claims).

However, this is one of those extraordinary circumstances. To state his DTPA claims, Grosser alleges only that "Red Mango violated §§ 17.12 & 17.46 of the [DTPA] by the misrepresentations set forth above." This Court has already held that these misrepresentations were insufficient to state fraud in the inducement claims. And without those misrepresentation allegations, there are no other allegations on which Grosser's DTPA could stand.[1] Thus, the Court grants Mango's motion to dismiss on Grosser's DTPA claims. Because the Court grants Mango's motion to dismiss Grosser's DTPA claim, the Court denies as moot Mango's alternative plea in abatement.

### H. The Court Declines to Dismiss Plaintiffs' Out-of-State Claims

Mango argues that Grosser may not bring his non-Texas claims because the Franchise Agreement provides that all claims between the parties shall be governed by Texas law. The choice of- law clause, located in section 19.1 of the Franchise Agreement, provides:

> 19.1 <u>Choice of Law</u>. This Agreement and all claims arising out of or related to this Agreement or the parties' relationship created hereby shall be construed under and governed by the laws of the State of Texas (without giving effect to any conflict of laws).

---

[1] The Court notes that Grosser might state his DTPA claim by simply realleging the relevant facts set forth in the "Facts Common to All Counts" section of its complaint. However, because Grosser simply incorporates those facts, and *Lone Star Ladies* compels the Court to disregard those allegations, the complaint contains no remaining factual allegations to support Mango's DTPA claim. *See Infomart (India)*, 2005 WL 292433, at *7 (declining to dismiss plaintiff's DTPA claims because "all allegations of fraud are contained in paragraphs separate from Infomart's . . . DTPA claims")

Red Mango is correct as to most of Grosser's claims but not as to all of them. The provision is written broadly. The clause reaches "all claims arising out of or related to this Agreement *or the parties' relationship created hereby*." (emphasis added). Thus, contrary to Grosser's assertions, the clause encompasses Grosser's extracontractual claims so long as those claims arise out of or relate to either the Franchise Agreement *or* the parties' relationship created by the Franchise Agreement. *Compare Caton v. Leach Corp.*, 896 F.2d 939, 943 n.3 (5th Cir. 1990) (construing similar clause as "broad" and "address[ing] the general rights and liabilities of the parties"); *El Pollo Loco, S.A. de C.V. v. El Pollo Loco, Inc.*, 344 F. Supp. 2d 986, 989 (S.D. Tex. 2004) (holding that tort claims fell under choice of law clause that reached "all disputes which may arise in connection with the performance of this Agreement") *with Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 726-27 (5th Cir. 2003) (clause providing "Agreement shall be governed by, and construed in accordance with, the internal laws of the State of New York" did not apply to fraud and negligent misrepresentation claims).

The Court sees no reason not to enforce this choice-of-law provision. Grosser argues that the choice of law clause does not apply because the Franchise Agreement is an adhesion contract. This is incorrect. The Restatement (Second) of Conflict of Laws (a provision adopted by the Texas Supreme Court for Texas courts to utilize in determining whether to enforce choice of law provisions) states:

> A factor which the forum may consider is whether the choice-of-law provision is contained in an "adhesion" contract, namely one that is drafted unilaterally by the dominant party and then presented on a "take-it-or-leave-it" basis to the

> weaker party who has no real opportunity to bargain about its terms. Such contracts are usually prepared in printed form, and frequently at least some of their provisions are in extremely small print. Common examples are tickets of various kinds and insurance policies. *Choice-of-law provisions contained in such contracts are usually respected.*

RESTATEMENT (SECOND) CONFLICT OF LAWS § 187 cmt b. (emphasis added); *see also Burbank v. Ford Motor Co.*, 703 F.2d 865, 866-67 (5th Cir. 1983) (applying this comment); *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677 (Tex. 1990) (applying section 187 to choice of law clause enforceability analysis). Grosser has cited no authority to the contrary.

Further, Texas courts would otherwise enforce this provision. Texas courts enforce choice of law provisions unless chosen law has no substantial relationship with the parties or unless there is a state with a materially greater interest in the dispute *and* applying the chosen law is against a fundamental policy of the state with the materially greater interest. *See DeSantis*, 793 S.W.2d at 677. Texas has a substantial relationship to the dispute because Red Mango is a citizen of Texas. *See Great Lakes Reinsurance (UK) PLC v. Durham Auctions, Inc.*, 585 F.3d 236, 242 (5th Cir. 2009) (holding that Great Lakes had substantial relationship in New York due to location of bank and trust accounts and registered agent for service in New York). And Grosser has failed to show that Massachusetts or Florida have a fundamental policy that would be contravened by the Court's application of Texas law to the claims and allegations to which the choice of law clause applies. *See CK DFW Partners Ltd. v. City Kitchens, Inc.*, No. 3:06-CV-1598-D, 2007 WL 2381259, at *8 (N.D. Tex. Aug. 17, 2007) (noting that plaintiffs bear burden of showing other state's fundamental policy conflicts with chosen law); *see also Salazar v. Costal Corp.*, 928 S.W.2d 162, 167 (Tex.

App. – Houston [14th Dist.] 1996, no pet.) ("We determine that Salazar failed to establish that application of Texas law would conflict with a fundamental policy of Ecuador."). Thus, for purposes of this motion, the choice-of-law clause is enforceable.

Nevertheless, although the timing is a bit unclear from the face of the pleadings, some of Grosser's allegations arose prior to the formation of the Franchise Agreement. Thus, although the agreement reaches some extracontractual claims, extracontractual claims based on actions occurring prior to the relationship created by the contract – before the contractual relationship existed – are not covered by the choice of law provision.[2] Grosser seeks to recover on statutory claims that arise *before* the franchise relationship existed. These statutory claims are extracontractual *and* precontractual and, accordingly, are not governed by the choice of law provision. The Court holds that such claims do not "arise out of or relate to" the Franchise Agreement or the franchise relationship created by the agreement because the allegations reach actions occurring prior to the franchise relationship. Thus, to

---

[2]The Court might reach a different result regarding fraud in the inducement claims. Allegations that a plaintiff was fraudulently induced into a contract as a whole do not do not operate to defeat a choice of law clause in that contract. *See In re J.D. Edwards World Solutions Co.*, 87 S.W.3d 546, 551 (Tex. 2002) ("Whether the contract between Doskocil and J.D. Edwards was induced by fraud is a dispute 'involving' their agreement."); *see also My Cafe-CCC, Ltd. v. Lunchstop, Inc.*, 107 S.W.3d 860, 867 (Tex. App. – Dallas 2003, no pet.) (holding that allegations of fraudulent inducement do not defeat forum selection clause). Rather, the plaintiff must allege that he or she was fraudulently induced to agreeing to the specific choice of law clause. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 201cmt. c ("The fact that a contract was entered into by reason of misrepresentation . . . does not necessarily mean that a choice-of-law provision contained therein will be denied effect. This will only be done if the misrepresentation . . .was responsible for the complainant's adherence to the provision."). There are no such allegations in Grosser's complaint.

the extent that Grosser seeks to recover for Red Mango's wrongful conduct prior to the parties' Franchise Agreement, the choice of law clause does not apply, and the Court declines to dismiss Grosser's FDUTPA, FFDL, and MCPA claims.

### III. THE COURT STRIKES GROSSER'S JURY DEMAND

Paragraph 19.5 of the parties' Franchise Agreement states:

> 19.5 WAIVER OF JURY TRIAL. MANGO AND YOU IRREVOCABLY WAIVE TRIAL BY JURY IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM, WHETHER AT LAW OR IN EQUITY, BROUGHT BY EITHER OF THEM AGAINST THE OTHER, WHETHER OR NOT THERE ARE OTHER PARTIES IN SUCH ACTION OR PROCEEDING.

Franchise Agreement ¶ 19.5  All of Grosser's claims fall under the scope of this provision. Nevertheless, Grosser argues that the jury waiver is unenforceable because the contract is an adhesion contract. But Texas and federal courts both enforce agreements to arbitrate in adhesion contracts, which of necessary encompasses a jury waiver, unless the arbitration agreement is substantively unconscionable. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991) (holding that unequal bargaining power does not defeat an agreement to arbitrate unless " the clause resulted from the sort of fraud or overwhelming economic power that would provide grounds for revocation of any contract"); *In re Palm Harbors Homes, Inc.*, 195 S.W.3d 672, 678 (Tex. 2006) (noting that "there is nothing inherently unconscionable about arbitration agreements," and that "the fact that [plaintiffs] would not have been able to buy the manufactured home unless they signed the arbitration agreement does not, in and of itself, make the agreement substantively unconscionable"). Adhesion contracts are not *per se* unconscionable. *See EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 90-

ORDER – PAGE 17

91 (Tex. 1996). And numerous courts around the country enforce jury waivers in franchise agreements even where the franchisor refuses to bargain. *See, e.g.*, *Bishop v. GNC Franchising, LLC*, No. 05-CV-0827, 2006 WL 2266251, at *2 (W.D. Pa. Jan. 13, 2006); *Cottman Transmission Sys. v. Melody*, No. 94-2038, 1994 WL 702913 (E.D. Pa. Dec. 13, 1994); *Bonfield v. AAMCO Transmissions, Inc.*, 717 F. Supp. 589, 596 (N.D. Ill. 1989). This is because, although the franchisor fails to allow the franchisee to bargain, the franchisee is free to reject the franchise opportunity. *See Bishop*, 2006 WL 2266251, at *2. Thus, Grosser's bare allegations that the franchise agreement was an adhesion contract are insufficient to avoid application of the jury waiver.

Grosser also argues that he was unaware of the legal consequences of the waiver. But in Attachment G to the Franchise Agreement, a provision signed by Grosser, Grosser checked boxes affirming that he, among other things, reviewed the agreement, understood the agreement, reviewed the agreement with a professional advisor, and discussed the risks and benefits of the Red Mango franchise with the advisor. Further, Texas courts presume that "a party who signed a contract knows its contents." *Cantella & Co. v. Goodwin*, 924 S.W.2d 943, 944 (Tex. 1996). And "a party's failure to read an instrument before signed it is not a ground for avoiding it." *Estes v. Republic Nat'l Bank of Dallas*, 462 S.W.2d 273, 276 (Tex. 1970). Accordingly, the Court grants Red Mango's motion to strike Grosser's jury demand.

CONCLUSION

For the reasons stated above, the Court grants Mango's motion in part, and denies it in part. The Court dismisses all of Phrozen's assets against Mango. The Court dismisses Grosser's fraud in the inducement and DTPA claims against Mango and dismisses Grosser's breach of contract claims against Mango as to paragraphs 3.1 and 3.4 of the Franchise Agreement. The Court also strikes Plaintiffs' jury demand. The Court denies Mango's motion to stay discovery. The Court grants Plaintiffs leave to replead within thirty days of the date of this Order.

Signed April 25, 2013.

_____
David C. Godbey
United States District Judge